### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ANTHONY KERSPILO,
    *Plaintiff*,

*v.*                        CASE NO. 13-CV-14476

COMMISSIONER OF           DISTRICT JUDGE ARTHUR J. TARNOW
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 17) be denied, that Defendant's Motion for Summary Judgment (doc. 21) be granted, and the decision of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (DIB). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 17, 21, 23.)

---

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff filed an application for a period of disability and DIB on March 23, 2011, alleging that he became unable to work on November 19, 2009. (Transcript, Doc. 13 at 125-26.) Plaintiff's claim was denied at the initial administrative stages. (Tr. 58-67.) On June 4, 2012, Plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") Andrew G. Sloss, who considered the application for benefits *de novo*. (Tr. 24, 35.) In a decision dated July 16, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from November 19, 2009, through the date of the ALJ's decision. (Tr. at 31.) Plaintiff requested Appeals Council review of this decision. (Tr. 19-20.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 21, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) On October 24, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not

the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**C.    Governing Law**

Disability for purposes of DIB is defined as the:

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a)(DIB). Plaintiff's Social Security disability

determination is to be made through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. § 404.1520. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive

finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d

727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of

limitations caused by [his] impairments and the fact that [he] is precluded from performing [his]

past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with

approval in *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. § 404.1520(a)(4)(v), (g).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2014, and had not engaged in substantial gainful activity since November 19, 2009, the amended alleged onset date. (Tr. 26.) At step two, the ALJ found that Plaintiff's degenerative disc disease and degenerative joint disease were "severe" and Plaintiff's chronic obstructive pulmonary disease (COPD) and depression were non-severe impairments within the meaning of the second sequential step. (Tr. 26-28.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 26-29.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform work at the sedentary[3] exertional level with the following limitations:

---

[3]

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[T]he claimant can occasionally, (sic) climb, balance, stoop, crouch, kneel or crawl. However, the claimant must avoid concentrated exposure to extreme heat, cold and humidity. The claimant must also avoid concentrated exposure to vibration and hazards. (Tr. 29.)

At step four, the ALJ found that Plaintiff could not perform any of his past relevant work as an assembler (unskilled and light in exertion per the Dictionary of Occupational Titles (DOT)), or a forklift driver (semi-skilled and medium in exertion). (Tr. 30.) At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy and therefore he was not suffering from a disability under the Social Security Act. (Tr. 30-31.)

###    E.    Administrative Record

Plaintiff was 46 years old at the time of the hearing. (Tr. 38.) Plaintiff has a high school education. (*Id*.) Plaintiff last worked in November 2009 as a forklift driver. He testified that he and others were permanently laid off, he had worked approximately eight months of that year and missed about 14 to 15 days of work due to his back and knee conditions. In the last few months of that job his position was to sequence radiators. (Tr. 39.) Prior to that, he worked at a solar panel company where the heaviest thing he lifted were solar panels, which he estimated to be more than 10 pounds but not more than 20 pounds in weight. (Tr. 40.) Plaintiff testified that his current income was from a Veterans Affairs (VA) Disability of 30 percent. (Tr. 41.)

Plaintiff testified that he is unable to work due to back pain. (*Id.*) He described back pain that travels down the left leg and causes his left foot to go numb. (Tr. 45-46.) He testified that he can sometimes only sit for 15 to 20 minutes at a time before needing to lie down, he cannot use stairs or walk long distances due to his knee impairments, and he has abdominal pain. (Tr. 41.) He stated that these problems started after a snowmobile accident in 1992. (*Id.*) He testified that the conditions progressively worsened over the years and "went right downhill" in 2009. (*Id.*) He

testified that the VA had also started treating him with medication for depression and his first treatment took place in the week prior to his hearing. (Tr. 42.)  At the hearing it was noted that he was wearing knee braces and Plaintiff testified that he wears them "[w]henever I go anywhere . . . . Some days it depends on the weather . . . and if it's wet and cold out, I'll put them on. . . . [I]f it's like real warm, then I won't put them on." (Tr. 46.) Plaintiff was also using a cane at the hearing and testified that he uses it everyday, all day, for walking, stability and getting up. (Tr. 46-47.) He testified that he can stand for about 20 minutes, walking varies from day to day, he can lift less than 10 pounds due to his back and he has problems bending over. (Tr. 47-48.)

Plaintiff testified that he does no cooking, but can make a sandwich, soup or cereal, and he does some vacuuming but takes a break and lies down after doing a room. (Tr. 43.) He described being able to go shopping with his mother but after 10 to 15 minutes he returned to the car and lay down due to back and knee pain. (*Id.*) He testified that he naps about twice a day for an hour to two hours after he takes his pain medication, which makes him "tired" and "fuzzy-headed." (Tr. 45.) Plaintiff has a driver's license and is able to drive. (Tr. 39.) He testified that he tried going to school and he cannot focus because of the pain. (Tr. 49.) He has "bad days" anywhere from two to four days per month. (Tr. 50.)

The ALJ asked the vocational expert ("VE") to consider an individual of Plaintiff's age, education and work experience who is able to perform light work as defined by the Regulations and further limited as follows:

> He can only occasionally climb, balance, stoop, crouch, kneel, or crawl. He must avoid concentrated exposure to extreme heat, cold and humidity. He must avoid exposure to vibration, concentrated exposure to vibration (sic) and also concentrated exposure to hazards. (Tr. 52.)

The VE testified that such an individual could not perform Plaintiff's past work, but that there are other unskilled, light exertion jobs that such an individual could perform, including the following within the region defined as the lower peninsula of the state of Michigan: Hand packer with 6,000 jobs, production inspector with 2,800 jobs, and office machine operator with 1,450 jobs. (Tr. 51-53.) The ALJ then asked the VE to consider the same individual, but with a limitation to sedentary exertion work. (Tr. 53.) The VE testified that the following jobs would be available: sorter packer with 1,250 jobs, visual inspector with 2,175 jobs, and visual surveillance monitor with 1,200 jobs. (*Id.*)

Finally, the ALJ asked the VE to consider an individual "unable to engage in sustained work activity on a regular and continuing basis for eight hours a day, five days a week for a 40-hour workweek or an equivalent work schedule, . . . ." (*Id.*) The VE testified that there would be no work available for such an individual. (*Id.*) The VE confirmed that her testimony had been consistent with the DOT. (Tr. 53-54.) Plaintiff's attorney also questioned the VE. (Tr. 54- 55.)

## F.     Analysis

Plaintiff contends that the ALJ's RFC is not supported by substantial evidence. Plaintiff disagrees with the ALJ's analysis of the evidence of record and argues that the ALJ failed to address Plaintiff's need for a cane for ambulation and standing, did not explain the weight given to the state agency medical evaluator, failed to properly address the opinion of a treating physician, and made an improper credibility determination.

## 1.     Evidence Not Before The ALJ

As an initial matter, throughout his brief, Plaintiff references a Functional Capacity Evaluation (FCE) dated August 20, 2012, and performed by an occupational therapist in vocational rehabilitation.(Tr. 14-18.) Although at the hearing, the ALJ left the record open for 30 days for

8

submission of additional VA records, no mention was made of an upcoming FCE.  More importantly, the FCE, post-dates the ALJ decision by one month and post-dates the hearing by approximately two months, however it was submitted to the Appeals Council.

The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401). In other words, the record reviewed by the court is that considered by the ALJ.  The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002).  The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).

The evidence must also relate "to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). "Evidence of a subsequent deterioration or change

in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (citing *Sizemore*, 865 F.2d at 712).

In spite of the importance Plaintiff attaches to the FCE, Plaintiff makes no request for a sentence six remand.  Even if a remand had been requested, I suggest that Plaintiff cannot allege good cause for the failure to submit the FCE earlier.  Plaintiff alleges in his reply brief that he could not have submitted it earlier because it was not in existence prior to the ALJ's hearing.  This argument, however, fails to meet the settled requirements for the submission of new and material evidence set forth above. As mentioned, the FCE that was submitted to the Appeals Council was not before the ALJ. The record post-dates the ALJ's hearing and decision and was not available prior to the ALJ's hearing and subsequent decision. It is not clear that this evidence relates to the period specifically before the ALJ; it also appears to be evidence of subsequent deterioration. The FCE evaluator noted that this individual was known to her "from previous contact" and noted that "[i]t does appear that Veteran is functionally more impaired at this time than during previous OT contact." (Tr. 15.) The record already contains a September 22, 2010 functional capacity evaluation (FCE) (Tr. 215-219 .) There was no reported use of cane at that time, but it was noted that he had an antalgic gate favoring the left leg. (Tr. 217.) The prior FCE in the record supports the conclusion that the new FCE shows evidence of deterioration, but deterioration subsequent to the period specifically before the ALJ.  Moreover, there is no showing that the ALJ might have reached a different decision had this FCE been considered. It is therefore not new and material evidence warranting a sentence six remand.

## 2.    Substantial Evidence

Initially, Plaintiff makes several general arguments citing specific evidence on which the ALJ relied, taking issue with the ALJ's presentation and analysis of the record. For example,

Plaintiff argues that the ALJ "focuses on conservative care and a lack of recommended surgery coupled with MRI findings (albeit the second MRI is not interpreted by a reviewing doctor, merely the ALJ's lay interpretation) to suggest the Plaintiff's impairments are not disabling." (Doc. 17 at 13-14.)

The record contains results from two MRIs of Plaintiff's lumbar spine: February 2009 and August 2011. (Tr. 218-19, 608, 645-46.) The 2009 MRI revealed a "[s]mall radial tear of the anulus along the posterior aspect of L3-L4 intervertebral disc," "[d]isc desiccation at L3-L4 and L4-L5 levels with minimal broad-based disc bulge," and "[n]o canal stenosis or neural foraminal narrowing." (Tr. 218.)

The basis for Plaintiff's argument that the ALJ made a "lay" interpretation of the August 2011 MRI is unclear because the MRI report was interpreted and verified by Wessam Bou-Assaly, M.D., Attending Physician, Radiology. (Tr. 645-46.) Dr. Bou-Assaly's final impression was "[m]ild multilevel lumbar spine degenerative changes from L3-L4 to L5-S1, . . . ." (Tr. 646.) The ALJ cited the impression and findings in his decision.  In comparison to the 2009 MRI, the ALJ noted that a "more recent MRI of the claimant's lumbar spine performed in August of 2011 indicates evidence of mild degenerative changes at the L3-4, L4-5 and L5-S1 levels. The study also reveals evidence of moderate right and mild left neuroforaminal stenosis at the L4-5 level and mild bilateral neuroforaminal stenosis at the L5-S1 level, but no evidence of significant disc herniation." (Tr. 27.) The ALJ's statement of the MRI findings is not in error nor is it inconsistent with the 2011 MRI findings. (Tr. 645-46.) When summarizing the L4-5 and L5-S1 levels, the ALJ stated that there was no significant disc bulge. The findings at those levels noted a thin annular tear at L4-5 and minimal diffuse disc bulge at L5-S1. (*Id.*) The ALJ did not make an erroneous

statement of fact regarding the 2011 MRI and his statements were based on the doctor's impressions within the MRI report.

Plaintiff also argues that the ALJ's RFC fails to mention Plaintiff's use of a cane. Plaintiff underwent a consultative physical examination with Robert Jamieson, D.O., on June 18, 2011. (Tr. 364-66.) Dr. Jamieson reported that "Patient exhibited a normal gait. He does not use a cane for his examination in the clinic today, but is slightly unsteady on his feet, especially with standing on one foot." (Tr. 365.) The doctor noted full range of motion in the knees with diffuse pain and "very mild crepitance" with flexion and extension. (*Id.*) Plaintiff had no difficulty getting on and off the examination table. (*Id.*) In his conclusions, the doctor noted that Plaintiff had stated that "he does use a cane for ambulation on a consistent basis. He was able to do the exam fairly well without the cane today, but he states he needs it all the time." (Tr. 366.)

B. D. Choi, M.D., completed a physical residual functional capacity assessment dated July 11, 2011. (Tr. 63-64.) As the ALJ noted, Dr. Choi had the benefit of Dr. Jamieson's examination report. (Tr. 61.) Dr. Choi opined that Plaintiff could lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk a total of about 6 hours per 8-hour workday and sit about 6 hours per 8-hour workday, and was limited to no more than occasional climbing stairs, ramps, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching and/or crawling, and must avoid concentrated exposure to extreme heat, extreme cold, wetness, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards, such as machinery and heights. (Tr. 64.) Dr. Choi did not find limitations in walking and/or standing that were more limited than those set forth for a light range of work, which includes standing or walking up to six hours of an eight-hour workday. *See* 20 C.F.R. § 404.1567(b).

Plaintiff underwent an EMG on December 5, 2011 due to a noted "long history of back pain with occasional pain and numbness down the posterior aspect of the left leg to the foot." (Tr. 414.) On examination it was noted that Plaintiff had an antalgic gate and used a cane to ambulate, yet he had normal strength and sensation in the lower extremities. (*Id.*) Reflexes at the knee and ankle were 1+. (*Id.*) All nerve conduction studies and the needle EMG examination of muscles was normal. (Tr. 415.) There was no "electrodiagnostic evidence of a radiculopathy, plexopathy or isolated mononeuropathy in the examined limb." (*Id.*)

On January 4, 2012 Plaintiff had a physical medicine consultation for his complaints of bilateral knee pain. (Tr. 409.) Plaintiff was referred to physical therapy and advised to use a patella tracking brace on both knees. (*Id.*) An x-ray revealed only mild degenerative changes of the knees. (Tr. 410.) The diagnostic impression noted "previous imaging and clinical exam consistent with likely bilateral patellofemoral syndrome." (*Id.*) X-rays of the bilateral knees revealed "[n]o acute displaced fracture or dislocation. No significant joint effusion. Minimal lateral tilting of the patella bilaterally" and "Early degenerative changes of the right medial compartment and bilateral patellofemoral joints. Bilateral tiny quadriceps enthesophyte." (Tr. 639.) At medical appointments, Plaintiff reported that he uses the cane for help with walking. (Tr. 402, 409.) Despite use of a cane, on examination, he most often had normal strength and sensation in the lower extremities. (Tr. 366, 410. 547.)

In his decision, the ALJ noted Plaintiff's report that he uses a cane "for support with walking and standing." (Tr. 26.) The ALJ also cited Dr. Jamieson's examination report, noting that Plaintiff "was able to participate in the examination fairly well without a cane, even though [he] reported that he needs one all the time. He also had no difficulty getting on and off the examination table." (Tr. 27.) Neither Dr. Choi nor Dr. Jamieson concluded that the cane was necessary for

13

ambulation or standing. In making the RFC determination, the ALJ considered Dr. Jamieson's report specifically, and considered it in the context of the other evidence and objective signs and findings in the record. (Tr. 29.) The ALJ ultimately concluded that Plaintiff was limited to a sedentary range of standing and/or walking, yet did not require a cane. I suggest that this finding is supported by substantial evidence.

Although the ALJ's RFC determination that Plaintiff may perform sedentary work without the use of a cane is explained and supported by substantial evidence, it is worth noting that, as Defendant points out, Social Security Ruling (SSR) 96-9p provides that

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded. SSR 96-9p.

Evidence in the record shows that Plaintiff reported use of a cane for walking (Tr. 409.) Dr. Jamieson reported that Plaintiff was only "slightly" unsteady without it, and predominately when standing on one foot. (Tr. 365.) At physical therapy in March 2012, standing balance was reportedly "good" or "normal." (Tr. 403.) Even if substantial evidence also supports a finding that Plaintiff requires a cane for some walking and standing on one foot, I suggest that pursuant to SSR 96-9p, the sedentary occupational base would not be significantly eroded.

Plaintiff also argues that the ALJ "erroneously" stated that the objective findings of the consultative examiner Dr. Jamieson were consistent with the state agency reviewer's residual functional capacity assessment. (Doc. 17 at 17.) Plaintiff fails to identify any inconsistency between Dr. Jamieson's examination report and Dr. Choi's RFC opinion. Nor does a review of the

14

two records reveal inconsistencies. The ALJ did not err in noting that Dr. Jamieson's findings are consistent with those of Dr. Choi. (Tr. 29.)

**3.     Medical Opinions**

Plaintiff argues that the ALJ erred in failing to give the opinion of treating physician Dr. Jayanthi Karthikeyan, internal medicine, controlling weight and did not explain the weight given to Dr. Choi where the ALJ found limitations greater than those opined by Dr. Choi. (Doc. 17 at 17.) "Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s)." 20 C.F.R. § 404.1502. After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an

ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 Fed.Appx. 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d at 875. Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p; *see also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors may be applied to all medical opinions, not just treating sources. SSR 06-3p.

16

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. *See* 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

In addition, "a treating physician's assessment may be unreliable because of the bias he or she may bring to the disability evaluation," i.e., he or she "'may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.'" *Id.* at 1073 (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)). "Additionally, we have noted that the claimant's regular physician may not appreciate how her patient's case compares to other similar cases, and therefore that a consulting physician's opinion might have the advantages of both impartiality and expertise." *Dixon*, 270 F.3d at 1177. "[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)).

Dr. Karthikeyan completed a Functional Capacity Questionnaire dated March 17, 2011. (Tr. 190.) Dr. Karthikeyan noted that she had treated Plaintiff from April 21, 2010 through the most

recent date at that time, March 11, 2011, at a frequency of approximately every six months. (*Id.*)
The doctor noted only the diagnosis of "chronic lower back pain" and opined that the prognosis
was "fair." (*Id.*) She opined that Plaintiff can sit and/or stand/walk for 0-2 hours of an 8-hour
workday, frequently lift less than 10 pounds and rarely (defined as 1% to 5% of the workday) lift
10 pounds. (*Id.*) She opined that Plaintiff could frequently engage in fingering, grasping or
handling, occasionally stoop (bend) and never crouch. She opined that in a typical workday
Plaintiff would frequently (defined as 34% to 66% of the workday) experience pain great enough
to interfere with the attention and concentration needed for simple work tasks and she identified
the following as Plaintiff's signs and symptoms: "[i]mpaired sleep," "[r]educed range of motion,"
and "[p]rescribed cane or other walking device." (*Id.*)

The ALJ discussed Dr. Karthikeyan's opinion twice in his decision. (Tr. 28, 29.) He
specifically identified Dr. Karthikeyan as a treating physician. (Tr. 28, 29.) The ALJ found that
Dr. Karthikeyan's opinion was inconsistent with the consultative examination performed by Dr.
Jamieson. (Tr. 29.) For example, Dr. Jamieson found Plaintiff was able to perform his examination
with use of his cane. (Tr. 27.) The ALJ also pointed out that the severity of Dr. Karthikeyan's
restrictions was not supported by the objective medical evidence. (Tr. 29.) The ALJ cited the 2011
MRI that revealed mild degenerative changes. (Tr. 27.) Dr. Karthikeyan's examination notes from
March 17, 2011, the date she completed the Functional Capacity Questionnaire, show that she
noted that Plaintiff had "no stenosis, mild disc bulge, seen PM, R and had PT, tramadol not helping
the pain, will switch to [Tylenol] #3 prn as planned, neurologically stable, chiropractor consult
pending, . . . ." (Tr. 627.)

The record shows that Dr. Karthikeyan's opinion regarding sitting and standing limitations
is based on Plaintiff's report of his abilities. Treatment notes from March 17, 2011, the same day

18

that the doctor completed the Functional Capacity Questionnaire, note that Plaintiff "states he was driving fork lifter (sic), not able to do the job anymore, not able to sit or stand for >2 hours, difficulty with walking sometimes, not able to sleep because of the pain . . . ." (Tr. 626.) The doctor failed to provide an objective basis for her opinion, which the ALJ found is contradicted by other evidence of record. *See generally Heston v. Comm's of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001)(ALJ's omission of a discussion of a doctor's report was harmless error. "Judicial review of the Secretary's findings must be based on the record as a whole. Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." Citations omitted.) The ALJ gave good reasons for failing to give Dr. Karthikeyan's opinion controlling weight and I conclude that substantial evidence in the record supports the ALJ's findings.

Plaintiff also argues that the ALJ failed to explain the weight given to Dr. Choi where the ALJ found limitations greater than those opined by Dr. Choi. It is clear that the ALJ considered Dr. Choi's opinion and much of the ALJ's RFC is consistent with Dr. Choi's opinion. The identifiable inconsistency between that opinion and the ALJ's findings is the exertional level at which the ALJ found Plaintiff could perform work. Despite the ALJ's finding that Dr. Choi's opinion was consistent with objective medical evidence, specifically a consultative examination, the ALJ concluded that Plaintiff is more restricted than Dr. Choi opined. Dr. Choi had opined that Plaintiff could stand and/or walk up to six hours of an eight-hour workday. (Tr. 63.) The ALJ pointed out that Dr. Jamieson reported that Plaintiff was "slightly" unsteady on his feet. (Tr. 29.) The ALJ's RFC limits Plaintiff to sedentary work, which requires far less walking and standing (no more than occasional), than the exertional level set forth by Dr. Choi. *See* 20 C.F.R. §

404.1567(a), (b). As Defendant argues, the ALJ also had the benefit of additional evidence from the period of time following Dr. Choi's opinion, including Plaintiff's testimony.

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
>> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts. *See Kornecky*, 167 Fed. Appx. at 507 (citations omitted).

Further, sedentary work is limited to lifting ten pounds, which is consistent with Plaintiff's Function Report wherein he reported an ability to lift ten pounds. (Tr. 154.) The ALJ's RFC and the portions of Dr. Jamieson's report to which he referred resolve any conflict between Dr. Choi's RFC opinion and the ALJ's much more restrictive RFC. (Tr. 29.) The ALJ's decision and RFC are supported by substantial evidence in the record.

## 4.   Credibility

Finally, Plaintiff argues that the ALJ did not properly explain his credibility finding and it is not supported by substantial evidence. Initially, Plaintiff argues that the ALJ erred in making a "boilerplate determination" by using the following language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. (Tr. 30.)

While the ALJ may have used this boilerplate language in conclusion, he included a discussion of the evidence as it relates to Plaintiff's credibility in the multiple preceding pages and paragraphs of his decision. This is evidenced by both the ALJ's written decision in the instant case

20

and Plaintiff's brief, in which Plaintiff also challenges the ALJ's specific reasons for discounting his credibility.

The ALJ is required by the Regulations to explain his credibility determination with respect to Plaintiff's symptoms. 20 C.F.R. § 404.1529; *see also* SSR 96-4p and 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witnesses's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence and contain specific reasons for the weight the adjudicator assigned to the individual's statements. *See id.*; SSR 96-7p. To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. § 404.1529(c)(2), (3); *see also* *Felisky*, 35 F.3d at 1039-41. Relevant factors to be considered include the following: daily activities, location, duration, frequency and intensity of pain and other symptoms, precipitating and aggravating factors, medicine including the type, dosage, effectiveness and side effects, treatment for relief of pain or other symptoms, any measures used to relieve pain, and "[o]ther factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(I)-(vii).

An ALJ is not precluded from focusing on the objective medical evidence in considering limitations and restrictions related to symptoms. The analysis of symptoms and resultant limitations starts with the "existence of a medically determinable physical or mental impairment," which "cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings." SSR 96-4p.

The ALJ considered the record in full, including objective medical evidence, when making his credibility findings. The ALJ cited medical evidence that did not support the severity of Plaintiff's allegations of pain and physical limitations, for example, the results of MRI imaging in both 2009 and 2011. (Tr. 26-27, 645-46.) In March 2011, Plaintiff's treating physician noted that the disc bulge was "mild" and there was no stenosis. (Tr. 627.)   X-rays taken in 2012 of the bilateral knees showed minimal lateral tilting of the patella bilaterally and early degenerative changes of the right medial compartment and bilateral patellofemoral joints, and bilateral tiny quadriceps enthesophyte. (Tr. 639.) July 20, 2011, and February 8, 2012 pulmonary function testing revealed normal FEV1 levels and the conclusion was "[n]ormal pulmonary mechanics." (Tr .612, 637.) The ALJ cited relatively normal findings on examination, including 5/5 strength and intact sensation, full range of motion in the knees and only very mild crepitance with flexion and extension. (Tr. 27, 365-66.) Yet the ALJ also noted a positive straight leg raising test and Plaintiff's unsteadiness on his feet without his cane. (Tr. 27, 365-66.)

The ALJ also considered Plaintiff's treatment and response to treatment. As he noted, treatment was conservative for both Plaintiff's back and knee pain. (Tr. 26.) Medication was prescribed, stretches were recommended for Plaintiff's back, and surgery was neither recommended nor performed. (Tr. 26-27, 223, 627-28.) For example, in December 2010 Plaintiff reported to the emergency department with complaints of a flare of his low back pain. The treating

physician noted "[low back pain] chronic, will manage conservatively with NSAIDs, ice/heat, [and] stretching exercises." (Tr. 255.) Following complaints of low back pain in June 2011, a nurse practitioner suggested that Plaintiff "follow a strong home stretching program" and "may use a tens unit." (Tr. 602.) Plaintiff was prescribed knee braces. (Tr. 26, 402, 409, 411.) Treatment providers noted that he used a cane.  (Tr. 26, 402-03, 409.)

Plaintiff argues that there are explanations for three specific factors which the ALJ pointed out in his credibility analysis. First, the ALJ noted that Plaintiff "indicated that he stopped working due to lay off rather than disability." (Tr. 28, 29.) The ALJ's statement is not in error. Plaintiff reported that stopped working when he was permanently laid of on November 19, 2009, for reasons other than his impairments. (Tr. 142-43.) The record shows that the ALJ followed up on this at the hearing where Plaintiff also testified, "We were permanently laid off and out of that year we were laid off about three months, so I only worked about eight months out of that year. And I missed approximately 14-15 days of work due to my back and my knees." (Tr. 39.) Next, the ALJ cited one instance of possible symptom magnification in the treatment record. In her treatment notes from April 6, 2011, Dr. Karthikeyan specifically noted the following with respect to the physical exam: "pt walking with moaning, but when he was looking for papers he was doing multiple turns comfortably and started moaning with pain again." (Tr. 238-40.) It was this record to which the ALJ referred in his credibility analysis. (Tr. 29.) The ALJ's citation was accurate and there is no evidence that it was taken out of context. The physician had found it noteworthy in the examination.

Finally, the ALJ pointed out that Plaintiff wore his knee braces on the outside of his pants at the hearing "to ensure that they were more readily noticed." (Tr. 28, 29.)  Plaintiff does not argue that the knee braces belong on the outside of his clothing. Instead he argues that "the fact

23

that he wore them outside of his clothing to show the ALJ he was following treatment should not have cut against his credibility." (Doc. 17 at 22.) As with the physician's note about Plaintiff's comfortable turns, above, the ALJ deemed it noteworthy that Plaintiff was wearing the braces in such an obvious way. The ALJ did not rely solely on this observation in weighing Plaintiff's credibility, and did not err in considering it in the context of many factors. It takes on further relevance in the context of the doctor's note about Plaintiff's moaning, yet performing comfortable turns, and raises the possibility of symptom magnification. Further, in March 2012, the physical therapist noted that Plaintiff does not wear his knee braces regularly. (Tr. 402.) The ALJ did not make an error of fact in these citations to the evidence, he did not rely solely on these three incidents, and such evidence may be considered. The ALJ explained his credibility decision and it is supported by substantial evidence in the record.[4]

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Serv.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The VE's testimony is substantial evidence supporting the ALJ's finding that Plaintiff could perform a substantial number of jobs in the economy. The ALJ's findings at step five are supported by substantial evidence.

## G.   Conclusion

The ALJ's decision to deny benefits was within the range of discretion allowed by law and it is supported by substantial evidence. Defendant's Motion for Summary Judgment (doc. 21)

---

[4]   To the extent that Plaintiff argues that he is classified with a 30% service connected disability that consists of degenerative arthritis (totaling 20%) and spondylolisthesis or segmental instability (10%), the VA disability determination is not dispositive. (Doc. 17 at 23, tr. 416.) The VA standards for rating disability are not the same as the Social Security Administration's standards, which make a determination of complete disability. Further, there is no evidence that a VA partial disability is inconsistent with the ALJ's finding that Plaintiff has multiple limitations in work-related activities.

should be granted, that of Plaintiff (doc. 17) denied and the decision of the Commissioner affirmed.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985);  *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 837 (6th Cir. 2006)(*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
Dated: November 6, 2014          United States Magistrate Judge